IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GEORGIO RODRIGUEZ SCOTT**                                                    **PLAINTIFF**

v.                                                      CIVIL ACTION NO. 2:19-cv-166-TBM-MTP

**FORREST COUNTY, MISSISSIPPI, et al.**                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Motion for Summary Judgment [46] filed by Defendants. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Motion for Summary Judgment [46] be granted, and that this matter be dismissed as outlined below.

## BACKGROUND

On October 29, 2019, Plaintiff Georgio Rodriguez Scott, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983. Plaintiff's claims arose while he was a pretrial detainee at the Forrest County Jail. *See* [46-1] at 5. In his complaint and as clarified by his testimony at the *Spears*[1] hearing, Plaintiff alleges two separate incidents that he claims violated his constitutional rights.

On June 4, 2019,[2] Plaintiff claims that he was called to the medical department at the jail and Defendant Williams[3] attacked him on his way there. Plaintiff claims that Defendant

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] The Omnibus Order [31] erroneously indicates that the alleged incidents occurred in 2020. This matter was filed in 2019 and the associated incidents occurred in 2019. The year will be correctly identified throughout this Report and Recommendation.

[3] Identified in the Complaint [1] as Correctional Officer 66.

1

Alexander[4] held Plaintiff down so that Defendant Williams could punch him. Plaintiff also claims that Defendant Alexander choked him and dragged him to isolation. *See* [46-1] at 11. Plaintiff claims that Defendant Williams delayed Plaintiff's medical care following this incident.

Plaintiff also alleges that on July 7, 2019, Defendant Gibson[5] gave him food that did not comply with his medical restrictions or religious beliefs and that Gibson threw the tray at him. He also claims that Gibson "put [him] in a chokehold…." which irritated his esophagus. *See* [46-1] at 7.

Plaintiff claims that the officers during both of these incidents were acting on behalf of Defendant Forrest County, MS at the time of the alleged events and that it should therefore be held responsible for the alleged incidents. *See* [31] at 2-3. Following the *Spears* hearing, the Court entered an Omnibus Order [31] directing that all motions be filed on or before July 15, 2022. Defendants moved for an extension of the motions deadline, and the Court extended the deadline to September 7, 2021. *See* Defendants' *Ore Tenus* Motion to Extend Motions Deadline 08/30/2021; Text Only Order 08/30/2021.

On September 7, 2021, Defendants moved for summary judgment arguing that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies, for failure to establish sufficient facts to show he is entitled to relief, and on the grounds that Defendants are entitled to qualified immunity. *See* [46]. While Defendants moved for summary judgment on exhaustion, they did not attach a copy of the administrative grievance policy. The Defendants did, however, include references to other § 1983 prisoner matters that were filed during the requisite time period related to incidents at the Forrest County Jail as well as copies of Plaintiff's grievances.

---

[4] Identified in the Complaint [1] as Correctional Officer 56.

[5] Identified in the Complaint [1] as Correctional Officer 41.

On January 13, 2022, prior to Plaintiff filing a response to the Motion for Summary Judgment [46], Defendants filed their Motion for Leave to File Affidavit [53] requesting leave of Court to file an affidavit of former-sheriff Billy McGee along with the jail grievance policy in place in 2019. Defendants argue that these documents support their claim that Plaintiff failed to exhaust administrative remedies.

On April 22, 2022, the Court granted Defendants' Motion for Leave to File Affidavit [53] and provided Plaintiff an opportunity to respond to the Motion for Summary Judgment as amended. Plaintiff filed his updated Response [67], and the Defendants have replied. This matter is now ripe for review.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id*. The nonmoving party, however, "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**I. Qualified Immunity**

In their Motion for Summary Judgment [46], Defendants Alexander, Williams, and Gibson argue that they are entitled to qualified immunity for Plaintiff's claims against them.

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A qualified immunity analysis requires a court to consider two questions: (1) has the plaintiff alleged a constitutional violation and (2) was that constitutional right clearly established at the time of the defendant's alleged conduct? *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (maintaining the two-step inquiry relating to qualified immunity but giving district courts the discretion to address the questions in the order that is most efficient.).

    *A. Excessive Force*

"To prevail on an excessive-force claim, a plaintiff must show '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). The Fifth Circuit recognizes "that inquires regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable… are often intertwined.'" *Id*. (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

    Plaintiff did not respond to Defendants' qualified immunity arguments. However, Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact for both the June 4, 2019 and July 7, 2019 alleged incidents of excessive force.

During the *Spears* hearing, Plaintiff testified that on June 4, 2019, Defendant Williams attacked him on his way to the medical department at the jail. He claimed that Defendant

4

Alexander held Plaintiff down so that Defendant Williams could punch him, and that Defendant Alexander choked him. Plaintiff claimed that after this attack, he could not open his mouth all of the way, had a collapsed nasal passage, and broken molars. *See* [46-1] at 13.

Plaintiff also testified that on July 7, 2019, Defendant Gibson placed Plaintiff "in a headlock and choked [him] out…." Plaintiff claimed that after the alleged attack he had irritation of his esophagus and that his throat was in "serious pain" and "popping." [46-1] at 7.

Plaintiff's credibility is not an issue appropriate for determination on summary judgment. *See Falcon v. Holly*, 480 Fed. Appx. 325, 326 (5th Cir. 2012). Considering the evidence in the light most favorable to Plaintiff, it is not possible to conclude as a matter of law that Defendants acted in an objectively reasonable manner that would entitle them to qualified immunity based on Plaintiff's version of events. *See Wernecke v. Garcia, 591 F.3d 386, 392* (5th Cir. 1996). Summary judgment is not appropriate on the basis of qualified immunity for these alleged incidents of excessive force.

*B. Delay of Medical Care*

Defendants also argue that summary judgment should be granted for Plaintiff's delay of medical care claim. At the *Spears* hearing, Plaintiff testified that Defendant Williams delayed Plaintiff's medical care following the altercation on June 4, 2019. *See* [31] at 2-3. Plaintiff claimed that he "had to flag the nurse" in order to receive medical attention and that the nurse treated him later that night or early in the day on June 5, 2019. *See* [46-1] at 12-13.

A delay in medical care violates the Eighth Amendment when the government official acted with deliberate indifference, which resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference "requires a showing that the official was

5

subjectively aware of the risk." *Farmer v. Brennan*, 511 U.S. 825, 829 (1994). "Negligent medical care does not constitute a valid section 1983 claim." *Mendoza*, 989 F.2d at 195.

At the *Spears* hearing, when asked what injury he received as a result in his medical care being delayed, Plaintiff stated "[n]o more than sheer panic." [46-1] at 13. Plaintiff goes on to describe other injuries, but they relate to the alleged attack, not the delay in medical care. Plaintiff has not suffered, or even alleged that he suffered, "any permanent or life-long impairment, which is a prerequisite for a claim of delay in the provision of medical treatment to an inmate plaintiff under § 1983." *Burns v. E. Baton Rouge Par. Prison Emergency Med. Sers.*, 2017 WL 4214143, at *6 (M.D. La. Sept. 6, 2017) (referencing *Harris v. Walley*, 436 F. App'x 372 (5th Cir. 2011)). Therefore, Plaintiff's delay of medical care claims against Defendant Williams should be dismissed.

*C. Conditions of Confinement*

Plaintiff alleges that on July 7, 2019, Defendant Gibson gave Plaintiff the "wrong" food tray. *See* [46-1] at 6. Plaintiff claims that when he told Defendant Gibson his food was not correct because it contained bologna, salami, and cheese that Defendant Gibson, "threw the tray back at [Plaintiff], and told [him] that's what [he] gets." *Id*. Plaintiff claims that this led to the incident of excessive force already addressed above. When asked what claims Plaintiff was bringing against Defendant Gibson at the *Spears* hearing, Plaintiff stated "[h]e, he denied my, my, my medical and religious standpoint of dietary." *Id*.

The Constitution requires that detainees and inmates be provided "well-balanced meals, containing sufficient nutritional value to preserve health." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *see also Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must

6

receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (internal quotations and citation omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

However, the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury…." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement also applies to First Amendment claims. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) (extending physical injury requirement to First Amendment claims). Allegations of a *de minimis* injury will not suffice. *Alexander v. Tippah Cnty. Miss.*, 351 F.3d 626, 631 (5th Cir.2003) (noting that the alleged physical injury must be more than *de minimis*); *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008).

Defendants argue that Plaintiff has not alleged any physical injury for his food-related claim and that his claim should be dismissed pursuant to 42 U.S.C. § 1997e(e). Plaintiff's sole request for relief in this matter is compensatory damages of $5,000,000.00. *See* Complaint [1] at 4. Plaintiff did not address this argument in his Response [63] to the motion for summary judgment.

A review of the record shows that Plaintiff has failed to make the requisite showing of physical injury to survive dismissal. Plaintiff's claims of injury at the *Spears* hearing related to the incidents of force discussed above, not his food complaints. Plaintiff also did not allege any injury related to his food complaints in his Complaint [1] or Response [67] to the Motion for

7

Summary Judgment. Accordingly, the undersigned recommends that Plaintiff's complaints regarding the food served to him by Defendant Gibson be dismissed with prejudice.

## II. Plaintiff's Claims Against Forrest County, Mississippi

Defendants argue that Plaintiff's claims against Forrest County, MS should be dismissed for failure to state a claim. Section 1983 does not allow a municipality to be held vicariously liable based on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Instead, Plaintiff must prove three elements to establish liability against a municipality under *Monell*: "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Covington v. City of Madisonville, TX*, 812 Fed. Appx. 219, 225 (5th Cir. 2020).

Plaintiff has failed to demonstrate, or even allege, that any official policy or custom was the "moving force" behind an alleged deprivation of Plaintiff's constitutional rights arising from the conduct of Defendants Gibson, Alexander, or Williams. *Monell*, 436 U.S. at 694; *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

Plaintiff admitted at the *Spears* hearing that he named Forrest County, MS as a Defendant solely because the other defendants were "representatives of the county jail." *See* [46-1] at 16. Plaintiff did not identify an official policy as required. Accordingly, the undersigned recommends Plaintiff's claims against Forrest County, MS be dismissed with prejudice.

## III. Exhaustion of Administrative Remedies

As previously mentioned, the Defendants are not entitled to qualified immunity for the incidents of excessive force alleged by Plaintiff on June 4, 2019 and July 7, 2019. However, Defendants argue that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. App'x 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Prisoner plaintiffs must exhaust their administrative remedies prior to filing their complaint. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (finding the pre-filing exhaustion requirement of the PLRA mandatory and non-discretionary).

In support of their Motion for Summary Judgment [46], Defendants submitted an affidavit from Julie Flowers, the records custodian at Forrest County Jail stating that during Plaintiff's incarceration, there was an administrative remedies program at the jail. *See* [46] at 2.

As discussed above, Defendants also submitted an affidavit from Billy McGee, the former sheriff of Forrest County, stating that there was a grievance policy in place in 2019. *See* [53-1] at 1-2. Defendants attached a copy of the jail's inmate handbook from 2019, which sets forth the grievance policy as follows:

> It is the intention of the Forrest County Sheriff's Office to resolve all inmate grievances/complaints regarding their incarceration. The following is the procedure for filing a grievance with the Sheriff's office and/or jail:
>
> 1. The grievance must be made in writing. It must be printed in black or blue ink.
> 2. The grievance must contain the following information:
>    -Name of inmate
>    -Inmates social security number
>    -Inmate cellblock
>    -Date of grievance
>    -Exact description of complaint
>    -Relief/Resolution desired by inmate
> 3. Inmate must sign grievance.
> 4. Grievance is to be submitted to the shift supervisor on duty.
> 5. You will be given notice of a hearing with the Sheriff or Chief of Corrections presiding. If relief or resolution is possible without a hearing, then no hearing will be scheduled.
> 6. All decisions of the grievance hearing will be final.
> 7. No group grievance/petitions will be accepted. Only individual inmate grievances will be reviewed.

*See* Inmate Handbook [53-1] at 14. Plaintiff was aware of the grievance procedure, using it frequently. According to Defendants' records, Plaintiff filed *thirty-nine* (39) grievances during his stay at the Forrest County Jail prior to filing the instant action, and he relied on those grievances in his responses to the motion for summary judgment. *See* [46-5], [47], [63-1] at 1-2.

Defendants attached copies of the grievances to the Motion along with a timeline of Plaintiff's grievances that were filed prior to the filing of the instant action. *See* [46-5]. Defendants argue that Plaintiff's grievances do not comply with the jail's grievance policy and

failed to put officials on notice of the alleged constitutional violations. Defendants argue that Plaintiff's Complaint [1] should therefore be dismissed for failure to exhaust.

      A. *Plaintiff's Excessive Force Claim Against Officers Alexander and Williams*

As discussed previously, Plaintiff claims that he was attacked by Defendant Williams and held down and choked by Defendant Alexander on June 4, 2019. *See* [31] at 2. After reviewing Plaintiff's jail file, it appears to the undersigned that Plaintiff failed to exhaust administrative remedies for this claim.

The Fifth Circuit has held that grievances should provide prison officials fair notice of an inmate's specific complaints and the "time and opportunity to address [the] complaints internally." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). The degree of specificity required in a grievance is determined by each prison's own protocol. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The grievance policy at the jail required a grievance to include, *inter alia*, an "exact description of complaint." *See* [53-1] at 14. While failure to identify a particular officer in a grievance does not necessarily preclude exhaustion, the Fifth Circuit has explained as follows:

> We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. *Cf. Brown*, 212 F.3d at 1207-10 (rejecting a rule that a prisoner must always name defendants in his grievance). But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Johnson*, 385 F.3d at 522.

In a grievance filed the day after the alleged attack, Plaintiff did not mention an attack at all.[6] *See* [46-4] at 5. Three days after the alleged attack, Plaintiff filed a grievance complaining of broken bones in his face, but he does not mention an incident involving an officer nor does he claim that the bones are newly broken. *See* [46-4] at 6. Four days after the alleged attack, Plaintiff filed a grievance asking why "officers involved in [his] assault" are allowed to continue to work in Plaintiff's unit. *Id*. at 7. He does not describe the officers, provide any details about an alleged assault, or provide a time frame when the assault occurred.

In a separate grievance filed the same day, Plaintiff claims that he would "like copies of all grievances filed to give [sic] to my attorney so we can have witnesses called and statements written footage of cameras played back and assaults and cruelty documented for court thank you [.]" This grievance does not provide names or descriptions of the officers involved in an assault, the date or time of an assault, or provide any information about an assault beyond a vague reference to an assault happening at some time in the past. This grievance is insufficient to put officials on notice that Defendant Williams and Defendant Alexander assaulted Plaintiff as alleged on June 4, 2019.

Plaintiff filed a third grievance on June 8, 2019, which states:

I receive a no boloni [sic] no salami trey [sic] classified thru [sic] medical I was screamed at and disrespected and made fun of because I received a broke[n] nose from an officer 41 told some smart remark due to my broke[n] nose treated very disrespectful and my food was thrown at me [.] All because I requested the trey [sic] I'm suppose[d] to have[.] cruel and unusual punishment

[46-4] at 8. There is no description of an event that caused the broken nose, no date or time that the alleged broken nose occurred, and the grievance appears to be more of a complaint about the

---

[6] In the June 5, 2019, grievance, Plaintiff claims that "24 Officer" (which is not the number of any of the officers named in the instant matter) cursed at and "disrespected" him when he asked for a grievance form. *See* [46-4] at 5.

food he received than any type of assault. While Plaintiff references an "Officer 41" (Defendant Gibson), Plaintiff claims in his Complaint that Defendants Alexander (Officer 56) and Williams (Officer 66) are the ones that assaulted him on June 4, 2019, not Defendant Gibson. *See* [1] at 4; [31] at 2; [46-1] at 5.

On June 9, 2019, Plaintiff filed a grievance claiming that he is "constantly abused and tortured by these officers" but he did not provide any specifics including the name of Defendants Alexander or Williams, a description of the officers, or a time or date that an incident of "abuse" or "torture" occurred. *See* [46-4] at 10. This grievance fails to provide an "exact description of complaint" or any particular complaint as required by the jail inmate handbook.

The grievances submitted by Plaintiff are woefully inadequate to alert prison officials that Plaintiff was assaulted by Defendants Williams and Alexander on June 4, 2019.[7] Prior to filing suit in this Court Plaintiff was required to exhaust his administrative remedies and did not for his claim of excessive force against Defendants Williams and Alexander. Therefore, the Court should grant the Motion for Summary Judgment [46] and dismiss these claims without prejudice.[8]

---

[7] The record in this matter certainly indicates that something occurred on June 4, 2019. Plaintiff was moved to isolation for disciplinary reasons on this date. *See* [46-9] at 2. It also appears that Plaintiff was taken to the emergency room at Forrest General where he complained that he "was beat by the police today." [52] at 91. However, two days later on June 6, 2019, Plaintiff was again taken to the emergency room at Forrest General Hospital, this time claiming that he was "attacked by another inmate" on that day. *See* [52] at 19. Regardless, Plaintiff was required to exhaust his administrative remedies before filing suit in this Court for all of his claims. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("…[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

[8] While the undersigned recommends dismissing several unexhausted claims without prejudice, it is not clear that Plaintiff will be able to exhaust these claims as he has indicated he is now in federal prison. *See* Response [56].

### B. *Plaintiff's Excessive Force Claim Against Defendant Gibson on July 7, 2019*

On July 7, 2019, Plaintiff claims that Defendant Gibson threw a food tray at Plaintiff. Plaintiff claims that Defendant Gibson then put him in a chokehold and that this led to an irritation to his esophagus.[9] *See* [46-1] at 6.

Four days after the alleged incident,[10] Plaintiff filed a grievance requesting a meeting with the sheriff stating "Ive [sic] been ignored so many crys [sic] for help and remedy I feel my life is in grave danger I do not feel safe at all." *See* [46-4] at 22. Plaintiff does not describe an officer or mention an officer by name, does not state anything about an incident on July 7, 2019, and does not mention that he was injured in any way. This grievance is insufficient to provide officials an opportunity to address his complaint about a July 7, 2019 incident of excessive force by Defendant Gibson. Additionally, the jail grievance procedure required an "exact description of complaint" which was not provided, nor was any description provided. *See* [53-1] at 14.

On August 23, 2019, forty-seven (47) days after the alleged incident, Plaintiff filed a grievance seeking transfer to a different facility claiming that he has been "subject to ridicule by staff" and that he "see[s] malicious intent to harm physically + mentally transfer me please." *See* [46-4] at 32. This grievance is insufficient to exhaust Plaintiff's claim of excessive force against Defendant Gibson on July 7, 2019 as it contains only generalizations, not an exact description (or any description) of the complaint as required nor does it claim that Defendant Gibson or any one else used excessive force on him at any time.

---

[9] Plaintiff complains of this same incident in another matter in this Court. *See Scott v. Billy McGee et al.*, 2:19-cv-123-TBM-MTP (filed Aug. 26, 2019).

[10] On this same day Plaintiff filed another grievance related to what he believed to be insufficiencies in the amount of recreation time and the law library at the jail. *See* [46-4] at 21.

14

In a second grievance filed that day, Plaintiff stated that he does not "feel safe" at the jail. *See* [46-4] at 33. However, Plaintiff does not provide any information about an incident of force involving Defendant Gibson. This grievance is likewise insufficient to put the jail on notice.

As Plaintiff did not exhaust his administrative remedies for his claim of excessive force against Defendant Gibson on July 7, 2019,[11] these claims should be dismissed without prejudice.

## RECOMMENDATIONS

Based on the foregoing reasons, the undersigned recommends that:

1. The Motion for Summary Judgment [46] be GRANTED;

2. Plaintiff's claims against Defendant Forrest County, MS, food-related claims against Defendant Correctional Officer 41 (Dustin Gibson), and delay of medical care claims against Defendant Williams be DISMISSED with prejudice;

3. Plaintiff's remaining claims against Defendants Correctional Officer 41 (Officer Dustin Gibson), Correctional Officer 56 (Officer Byron Alexander), and Correctional Officer 66 (Officer Richard Williams) be DISMISSED without prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed

---

[11] While Plaintiff did not sufficiently exhaust his administrative remedies for this incident, Defendant Gibson filled out an Incident Report on that day. In the report, Defendant Gibson claims that Plaintiff "refused to lockdown, we proceeded to escorted [sic] him to his room but he became combative. After he managed to check me as all available officers arrived and assisted we were able to cuff him and move him to Isolation #4." *See* [46-7] at 58.

findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 24th day of June, 2022.

                                                             s/Michael T. Parker
                                                             UNITED STATES MAGISTRATE JUDGE